UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JEREMY BACHMAN and DEBRA BACHMAN, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 3:10-CV-461 JD<br>) |
| AMCO INSURANCE COMPANY, | )<br>) |
| Defendant. | ) |

**OPINION AND ORDER**

This action arises from a breach of contract dispute between Plaintiffs Jeremy and Debra Bachman (the Bachmans) and their insurer, AMCO Insurance Company (AMCO). The issue is whether AMCO properly limited the recovery for collector sports cards stolen during a burglary of the Bachmans' home under the business property coverage limitation contained in the Bachmans' homeowners insurance policy. AMCO's motion for summary judgment [DE 20, 21] is ripe since a response [DE 25, 26] and reply [DE 27] were filed. For the following reasons, AMCO's motion for summary judgment is DENIED.

**I. BACKGROUND**

Mr. Bachman started attending sports card shows in 1990 and during college he opened a sports memorabilia business named Spectator Sportscards, Inc., with the Bachmans serving as the only shareholders [DE 20-1 & 26-1 at 8-9, 21, 25-27[1]]. Originally the business operated at two physical retail locations in Elkhart and Nappanee, Indiana, but in the late 1990's ebay® became popular and Mr. Bachman operated the business solely out of his home while still regularly

---

[1]On June 19, 2010, Mr. Bachman was examined under oath with his attorney present at Nationwide's trial division office and the relevant portions of his testimony were provided by the parties [DE 20-1 and 26-1].

attending card shows. *Id*. at 25-27, 33. Mr. Bachman admitted that he did not keep records because he accumulated his inventory over twenty years, it just never really occurred to him to maintain records for his personal sports memorabilia collection, and he did his best to keep some records of his business inventory but it was difficult to keep track of the inventory he acquired, traded, and sold because he often paid or received cash for a collection. *Id*. at 34, 36, 38-41. Mr. Bachman testified that he uses the revenue from the business to buy more cards, make his mortgage payment, and pay for meals. *Id*. at 76. Although Mr. Bachman stores his business inventory and his personal collection of sports memorabilia in essentially the same location—his home office, garage, and other locations in his home, Mr. Bachman testified that the difference between his business inventory and his personal collection is that he "wouldn't sell [his] personal stuff" because "they're investments" and he was keeping his personal collection for "down the road" for retirement or helping his son with college [DE 20-1 & 26-1 at 27, 36-38, 44, 115-16; DE 20-2 at 25-28]. Mr. Bachman admitted that his personal collection (or "investments") was purchased with assets from Spectator Sportscards, Inc. and would some day be sold though his company when he was ready to retire [DE 20-1 & 26-1 at 114-15].

On November 27 or 28, 2009, the Bachmans' home was burglarized and they filed a residential burglary report with the Elkhart Sheriff's Department [DE 1 at 1-2, Exb. 2 at 46-76]. At the time, the Bachmans were insured by an AMCO homeowners policy, No. HA13008460, which covered the term of May 27, 2009 to May 27, 2010[2] [DE 1 at 1, Exb. 1 at 6-96; DE 8 at 1; DE 8-1].

---

[2]The policy provided by AMCO included only every other page of the policy [DE 8-1, Exb. 1; DE 26-6]; whereas the policy attached as an exhibit to the complaint submitted by the Bachmans appeared complete [DE 1, Exb. 1]. AMCO admitted in its answer that the policy attached by the Bachmans was in effect at the time of the loss [DE 8 at 1]. In any event, the relevant policy definition for 'business property,' which is at issue in this case and considered herein, is identical in the policies filed [DE 1, Exb. 1 at 8, 11; DE 8-1 at 9, 19; DE 26-6 at 16, 26].

AMCO admits that the coverage limit for the loss of personal property was $176,400 with a special limit of liability with regard to business property of $10,000 [DE 8 at 1-2, 4]. After the Bachmans filed a claim with AMCO and submitted a list of losses, AMCO issued payment for some items stolen but characterized certain sports memorabilia as business property limited by the business property coverage limitation [DE 1 at 2-4, Exb. 3 at 78-96].

At the center of the dispute, are sports cards which were stolen during the burglary including four unopened wax boxes of 1986-1987 Fleer basketball cards and one unopened box consisting of a twelve box case of 1986-1987 Fleer basketball cards [DE 1 at 86; DE 20-1 & 26-1 at 45-46; DE 20-3 at 4, Plfs' Resp. to Def's Interrog. No. 5]. Mr. Bachman indicated that the individual boxes are each worth $20,000 retail, or $80,000 total retail (with the wholesale value equaling about half of the retail value), and that he originally bought them at a card show and paid $5,000 cash for each box using money from Spectator Sportscards, Inc. [DE 20-1 & 26-1 at 47-51, 60]. The twelve box case is worth roughly $150,000 and was also purchased with money from Spectator Sportscards, Inc. [DE 20-1 & 26-1 at 60; Plfs' Resp. to Def's Interrog. No. 5]. These items were not listed for sale as part of the business operated by Mr. Bachman [DE 20-1 & 26-1 at 79, 114-16; Plfs' Resp. to Def's Interrog. No. 5], and Mr. Bachman considered them personal investments which were not going to be sold through his company until sometime in the distant future [DE 20-1 & 26-1 at 114-16; DE 26-2 at 25]. In fact, at some point prior to the burglary, Mr. Bachman had previously rejected an offer to sell the 1986 Fleer basketball cards as it was part of his personal collection [DE 26-4 at 2].

Mr. Bachman testified that he also had approximately $150,000 to $250,000 (book value) worth of cards located in his garage [DE 20-1 & 26-1 at 82] and that he had a separate business

3

policy through General Casualty Insurance Company to provide coverage for the business related items located in his garage and home [DE 20-3 at 4, Plfs' Resp. to Def's Interrog. No. 5]. However his business policy through General Casualty only covered $50,000 worth of loss [DE 20-1 & 26-1 at 85], and he confirmed that he did not submit a claim to General Casualty for the loss of his personal property, including his personal investments at issue in this case [DE 20-1 & 26-1 at 114]. The Bachmans' insurance agent negotiated a payment from General Casualty for less than the policy limits for the theft of Spectator Sportscards, Inc.'s documented business inventory and equipment [DE 20-1 & 26-1 at 78-85].

Relative to the claim filed with AMCO, the Bachmans received a letter from AMCO explaining its decision to pay a total of $35,728.25 in actual cash value for losses sustained and noting that certain policy limits applied [DE 1 at 2-3, Exb. 3 at 79, 85-93; DE 8 at 3-4]. In particular, the business property limitation of the Bachmans' homeowners policy applied, *see id.*, which provided in relevant part as follows:

HOMEOWNERS 3 SPECIAL FORM

***

DEFINITIONS
***

    B.    In addition, certain words and phrases are defined as follows:
***

        3.    **"Business" means**:

            a.    **A trade, profession or occupation engaged in on a full-time, part-time or occasional basis**; or

            b.    **Any other activity engaged in for money or other compensation**[3]
               . . .
***

---

[3]Except to exclude certain volunteer activities, these terms are not further defined in the policy.

4

SECTION I - PROPERTY COVERAGES
                                      ***

    C.      Coverage C - Personal Property
                                      ***

        3.      Special Limits of Liability
These special limits of liability do not increase the Coverage C limit of liability. The special limit for each category below is the total limit for each loss for all property in that category.
                                      ***

        (h)     $10,000 **on property**, on the "residence premises", **used mainly for "business" purposes**.

[DE 1, Exb. 1 at 8, 11; DE 8-1 at 9, 19; DE 26-6 at 16, 26] (emphasis added).

As a result, the Bachmans filed suit in the Elkhart Circuit Court claiming that AMCO breached its contract of insurance by not covering the loss of the 1986-1987 Fleer basketball cards as personal property by reliance on the business property limitation [DE 1 at 3]. AMCO filed a notice of removal [DE 2], asserting diversity jurisdiction under 28 U.S.C. § 1332. The Court concludes that subject matter jurisdiction is established on the basis of diversity because the amount in controversy exceeds $75,000.00, AMCO is a citizen of Iowa because it is incorporated in Iowa and has its principal place of business in Iowa, and the Bachmans are citizens of Indiana. 28 U.S.C. § 1332(a), (c)(1).[4]

## II. STANDARD OF REVIEW

---

[4] At first blush, it might appear that diversity jurisdiction is lacking in this case. 28 U.S.C. § 1332(c)(1) states that:
> a corporation shall be deemed to be a citizen of every State . . .by which it has been incorporated and of the State . . . where it has its principal place of business, **except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of every State . . . of which the insured is a citizen** . . .

28 U.S.C. § 1332(c)(1) (emphasis added). The emphasized text can add a third type of citizenship to defendant insurers: citizenship in the state where the insured is a citizen. However, the Seventh Circuit has stated that the provision is "a special rule for insurers in 'direct actions'—that is, cases in which a person with a claim against the insured sues the insurer directly." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 511 n.1 (7th Cir. 2008) (quoting *Ind. Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 317 (7th Cir. 1998)). This is a case of the insured suing the insurer and thus is not a direct action, so the Court does have subject matter jurisdiction via diversity. *See id.*

5

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record, or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed R. Civ. P. 56(c)(1).

The court construes the evidence and all inferences that reasonably can be drawn from the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Seventh Circuit has cautioned against weighing evidence at summary judgment, *Kodish v. Oakbrook Terrace Fire Prot. Dist.,* 604 F.3d 490, 507 (7th Cir. 2010), and it has also said that "a factual dispute is 'genuine' only if a reasonable jury could find for either party," *SMS Demag Aktiengesellschaft v. Material Scis. Corp.,* 565 F.3d 365, 368 (7th Cir. 2009). "Summary judgment cannot be used to resolve swearing contests between litigants." *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citation omitted).

If the nonmoving party fails to establish the existence of an essential element on which it bears the burden of proof at trial, summary judgment is proper–even mandated. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (holding that a failure to prove one essential element to the party's case which it bears the burden of proof on "necessarily renders all other facts immaterial")).

As a federal court sitting in diversity, the Court will rely on state substantive law and attempt to predict how the Indiana Supreme Court would decide the issue presented here. *See*

*Lexington Ins. Co. v. Rugg & Knopp, Inc.,* 165 F.3d 1087, 1090 (7th Cir. 1999) ("Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently.").

## III. DISCUSSION

The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages. *See Rice v. Hulsey*, 829 N.E.2d 87, 89 (Ind. Ct. App. 2005). At issue here is whether AMCO's decision to limit insurance coverage for Mr. Bachman's 1986-1987 Fleer basketball cards under the business property limitation of the policy constituted a breach.

Contracts of insurance are governed by the same rules of construction as other contracts. *Bradshaw v. Chandler,* 916 N.E.2d 163, 166 (Ind. 2009) (citing *Allgood v. Meridian Sec. Ins. Co.*, 836 N.E.2d 243 (Ind. 2005)). In the absence of ambiguity, their words are given their ordinary meaning. *Id*. (citing *Auto–Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279 (Ind. 2006)).

Policy terms are interpreted "from the perspective of an ordinary policyholder of average intelligence." *Bradshaw,* 916 N.E.2d at 166 (citing *Allgood*, 836 N.E.2d at 246-47) (quoting *Burkett v. Am. Family Ins. Group*, 737 N.E.2d 447, 452 (Ind. Ct. App. 2000)). Where an ambiguity exists, that is, where reasonably intelligent people may interpret the policy's language differently, we construe insurance policies strictly against the insurer. *Id*. (citing *Fid. and Deposit Co. of Md. v. Pettis Dry Goods Co.*, 190 N.E. 63, 65 (1934) ("any doubts or ambiguities must be resolved most strongly against" the insurer)). This is particularly the case where a policy excludes coverage. *Id*. (citing *Am. States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996)); *see State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012) (noting that insurers are free to limit the coverage

7

of their policies, but such limitations must be clearly expressed to be enforceable). Strict construction against the insurer derives from the disparity in bargaining power characteristic of parties to insurance contracts. *Bradshaw,* 916 N.E.2d at 166 (citing *Wagner v. Yates*, 912 N.E.2d 805, 810 (Ind. 2009)). "The insurance companies write the policies; we buy their forms or we do not buy insurance." *Id*. (citations omitted). Nevertheless, limits on coverage are enforced where the policy unambiguously favors the insurer's interpretation. *Id*. (citation omitted). The Court, construing an insurance contract, "ultimately must give effect to the intent and reasonable expectations of the parties as expressed in the contract," and the Court's power does not extend to changing the contract terms. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 669 (Ind. 1997); *see Kimmel v. Western Reserve Life Assur. Co. of Ohio,* 678 F.Supp.2d 783, 797 (N.D. Ind. 2010).

Generally, construction of a written contract is a question of law for the trial court and therefore summary judgment is particularly appropriate. *Plumlee v. Monroe Guar. Ins. Co.,* 655 N.E.2d 350, 354 (Ind. Ct. App. 1995) (citation omitted) However, if reasonable minds differ as to the meaning of the contract's terms, then an ambiguity exists rendering summary judgment inappropriate. *Id.*; *see Cinergy Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.,* 865 N.E.2d 571, 574 (Ind. 2007) (holding that if summary judgment turns on the interpretation of a written document, any ambiguity that arises must be resolvable without the aid of the fact-finder). Summary judgement would not be appropriate where a fact-finder would have to weigh the evidence to ascertain facts necessary to construe the contract. *Plumlee,* 655 N.E.2d at 354 (citation omitted). Further, because insurance policies are construed as a whole in each case, prior cases that focus upon similar or identical clauses or exclusions are not necessarily determinative of later cases because the insurance

policies as a whole may differ. *See Masten v. AMCO Ins. Co.,* 953 N.E.2d 566, 569 (Ind. Ct. App. 2011) (citation omitted).

The policy at issue in this case provides for a business limitation if the property on the residence premises[5] is "used mainly for business purposes," with "business" defined as "[a] trade, profession or occupation engaged in on a full-time, part-time or occasional basis" or "[a]ny other activity engaged in for money or other compensation." [DE 1, Exb. 1 at 8, 11; DE 8-1 at 9, 19; DE 26-6 at 16, 26].

Given the policy language, AMCO argues that the $10,000 business property limitation applies to the 1986-1987 Fleer basketball cards. Relying on excerpts from Mr. Bachman's examination under oath, AMCO contends that the subject property was business property because it was stored in a manner indistinguishable from the business inventory and was acquired with resources from Spectator Sportscards, Inc. with the intention of eventually being sold through the company. AMCO cites *Asbury v. Ind. Union Mut. Ins. Co.,* 441 N.E.2d 232 (Ind. Ct. App. 1982), *Am. Family Mut. Ins. Co. v. Bentley,* 352 N.E.2d 860 (Ind. Ct. App. 1976), and *Auto. Underwriters, Inc. v. Hitch,* 349 N.E.2d 271 (Ind. Ct. App. 1976) in support of its argument.

These cases actually support the denial of summary judgment. In *Asbury*, Mr. Asbury was employed as a mill operator, but hunted for sport and sold the animal pelts. *Asbury,* 441 N.E.2d at 234. Mr. Asbury never relied on the sale of the animal skins to make his living, never bought or sold animal skins as a trade, profession or occupation, and because he was not a licensed animal dealer, he was required to sell or dispose of the pelts before a certain date every year. *Id.* Sometime in December 1980, Mr. Asbury's animal skins were stolen and his insurer rejected the loss claiming

---

[5]It is undisputed that this term refers to the Bachman home where the burglary took place and the Fleer basketball cards were stolen.

9

that the skins represented business property excluded under the clause "business property in storage or held as a sample or for sale or delivery after sale," with "business" defined as "includes trade, profession or occupation." *Id*.

The Court of Appeals of Indiana held that given that the insurance policy "did not clearly and unmistakably exclude from coverage such property" as Mr. Asbury's pelts and that Mr. Asbury was gainfully employed, it was "a reasonable expectation of the insured that his animal pelts were covered as his personal property." *Asbury,* 441 N.E.2d at 242. The appellate court reasoned that simply because Mr. Asbury received money for an activity incidental to his occupation and which he considered his hobby does not make it "business property," especially where the exclusion does not clearly define it as such. *Id*. Defining "business" as a trade, profession or occupation is somewhat all-inclusive, the effect of which is arguably no different than defining "business" as "business." *Id*. Thus, "while each case is fact-sensitive for determining whether a particular activity is 'business' or involves 'business property,'" *id*. at 239, in this case it was reasonable for Mr. Asbury to assume "business property" and "business" were matters having to do with his regular employment as a mill operator, and it was equally reasonable for him to assume, under the policy's broad definitions, that his animal skins were personal property covered against theft or loss by his homeowners policy. *Id*. at 242. In concluding, the appellate court warned "[w]hether an activity is a 'business' or property is 'business property' under an insurance policy is almost always a factual question presented for determination by the trier of fact or jury." *Asbury*, 441 N.E.2d at 243.

Among the cases analyzed in *Asbury*, were *Bentley* and *Hitch*. In *Bentley*, the Court of Appeals of Indiana held that a provision in a homeowners policy excluding coverage for any "business pursuit" of an insured was not applicable where the insured had been renting storage space

to third persons. *Bentley,* 352 N.E.2d at 330. Because the record did not disclose that Mr. Bentley continually or regularly rented storage space to third persons, nor that he sought to store the property of others in order to earn a livelihood, the appellate court held that the activity does not constitute a "business" unless the insured regularly and continually rents storage space to third persons for the purpose of earning a livelihood. *Id.* The court noted that to the extent that having a profit motive indicates that an activity constitutes a business pursuit, "the evidence was conflicting as to whether profit was Bentley's motive," and therefore there was no error in concluding that offering storage space for rent did not constitute a business pursuit. *Id.*

In *Hitch*, the insured owned a gasoline service station, and in addition to his service station business, Mr. Hitch sold reloaded shotgun shells from both his personal residence and the gas station. *Hitch,* 349 N.E.2d at 274. A purchaser of the shells, who was injured when a shell malfunctioned and exploded, subsequently brought an action against Mr. Hitch. *Id.* The Court of Appeals of Indiana held that since Mr. Hitch regularly reloaded the shells for later resale for profit to customers of his service station, this activity fell within the 'business pursuits' exclusion in the homeowners policy. *Id.* at 275. In the subsequent case of *Asbury*, the appellate court reiterated that under the facts presented in *Hitch*, "the resale of shotgun shells can hardly be viewed, as the trial court found, as merely a hobby conducted for his personal pleasure and enjoyment. Mr. Hitch was selling these shells to his regular service station customers." *Asbury*, 441 N.E.2d at 239.

Unlike *Asbury*, *Bentley*, and *Hitch*, where the appellate court was confronted with an insured who was actually selling the subject property (animal skins, storage space, shotgun shells) for money or other compensation, Mr. Bachman testified during his examination under oath that his 1986-1987 Fleer basketball cards were not for sale, but rather, were his personal investments. To the extent that

11

AMCO argues that the Fleer basketball cards automatically fit within the business property limitation at issue simply because Mr. Bachman operated a sports memorabilia business out of his home on a consistent basis at the time of the burglary, the argument cannot result in the granting of summary judgment in AMCO's favor. No one disputes that Spectator Sportscards, Inc. constituted a "business" and that Mr. Bachman regularly and continually sold sports memorabilia from his home office to third persons for the purpose of earning a livelihood. *See Frankenmuth Mut. Ins. Co. v. Williams*, 690 N.E.2d 675, 680 (Ind. 1997) (reiterating that an insured is engaged in a business pursuit only when he pursues a continued or regular activity for the purpose of earning a livelihood) (citing *Bentley*). However, the limitation in AMCO's policy plainly depends on the *use* of the property at issue. In other words, the limitation applies only when the property at issue is *used mainly for business purposes*—that is, only when the Fleer basketball cards are used mainly for a trade, profession or occupation or for any other activity engaged in for money or other compensation. And here, is where the genuine dispute of material fact arises.

On the one hand, there are uncontested facts which would support Mr. Bachman's position that the cards were part of his personal collection of sports memorabilia at the time of the burglary, and thus were personal property for insurance coverage purposes. For instance, Mr. Bachman's personal collection of sports memorabilia, including his 1986-1987 Fleer basketball cards, was not listed for sale but was collected as an investment, he previously rejected an offer to sell the cards sometime prior to the burglary, and he did not claim the cards as losses under his separate business policy through General Casualty. On the other hand, as AMCO points out in support of its position that the basketball cards constituted business property, Mr. Bachman undeniably used funds from Spectator Sportscards, Inc. to purchase the 1986-1987 Fleer basketball cards (as he did to pay for

12

various other personal expenses), did not maintain a record of their purchase, stored them in a manner indistinguishable from his business inventory, and intended to sell them through the company at some point in the distant future. Unquestionably, the facts of this case lead to susceptible different inferences about whether Mr. Bachman's 1986-1987 Fleer basketball cards were used mainly for a trade, profession or occupation or for any other activity engaged in for money or other compensation—but, Mr. Bachman is entitled to have the inferences that reasonably can be drawn from the evidence viewed in his favor on summary judgment. Because a jury could find that Mr. Bachman's 1986-1987 Fleer basketball cards were personal property and not used mainly for business purposes, and thus it would be reasonable for Mr. Bachman to assume, under the policy's definitions, that his personal collection was covered against theft or loss by his homeowners policy, summary judgment is inappropriate. *See United Farm Bureau Mut. Ins. Co. v. Schult,* 602 N.E.2d 173, 177 (Ind. Ct. App. 1992) (affirming the denial of summary judgment and noting that the trier of fact need not conclude, as a matter of law, that the property was used for the business; instead, the trier of fact must determine the extent of the connection with the business and whether it fulfills the language of the policy).

The Court also notes that the insurance policy did not exclude property used mainly for business purposes "at any time," nor did it exclude property "to be used" mainly for business purposes. While there may have been an explicable past or future business motive, Mr. Bachman advances that at the time the property was stolen it was part of his personal collection and he was not offering them for sale. *See Am. Family Mut. Ins. Co. v. Ginther*, 803 N.E.2d 224, 233-34 (Ind. Ct. App. 2004) (holding that the proper focus for determining 'use' is at the time of the accident; considering a policy providing coverage only when the vehicle is "not used in any business or

occupation" and determining that the insured's intent to restore the vehicle and eventually use it in his own construction business did not constitute use in a business at the time of the accident); *see, e.g., Singer v. Nat'l Fire Ins. Co. of Hartford,* 264 A.2d 270, 272-73 (N.J. Super. Ct. Law Div. 1970) (a possible business motive from the past or in the future is not enough to take property out of the domain of personal and treat it as 'pertaining to business'). And it logically follows that a person may own one article for a business purpose and another similar article which has no connection with his business. *See, e.g., Jerrel v. Hartford Fire Ins. Co.*, 103 N.W.2d 83, 86 (Iowa 1960) (noting that the mere presence of the property in the plaintiff's business office did not make it part of the business).

Today's ruling is also consistent with this Court's determination in *Allstate Ins. Co. v. Parker*, No. 1:06cv217, 2008 WL 544745 (N.D. Ind. Feb. 26, 2008). In *Parker*, the insured's homeowners policy did not cover bodily injury or property damage arising out of the past or present business activities of an insured, and "business" was defined to include in relevant part "[a]ny full or part-time activity of any kind engaged in for economic gain." *Id*. at *3 (emphasis added). The Court reasoned that the "definition of business hinges on what the insured 'engaged in for economic gain'; hence, the definition revolves around the insured's state of mind." *Id*. at *6. Because Mr. Parker had himself testified to completing the tasks at issue hoping that he would get hired, the Court found that Mr. Parker had a profit motive and his actions were an activity engaged in for economic gain. *Id*. at *6-7. As a result, the policy afforded Mr. Parker no coverage because "[t]he only inference available [was] that [Mr. Parker] went there to further his livelihood." *Id*. at *7.

Unlike Mr. Parker's stated intentions, which were to derive an economic gain at the time of the loss, Mr. Bachman's stated intentions were to keep his personal basketball card collection as an

14

investment. Given that the language of the limiting clause did not clearly and unmistakably limit the coverage of property such as Mr. Bachman's claimed personal investment of sports memorabilia, the Court finds that whether the subject property is property used mainly for business purposes under AMCO's insurance policy is a fact-sensitive inquiry which can only be made by weighing and examining the evidence and making credibility findings, and thus, must be presented for determination by a trier of fact or jury. *See Bradshaw,* 916 N.E.2d at 166; *Asbury*, 441 N.E.2d at 239, 242-43.

As guided by Indiana precedent, the Court finds that whether Mr. Bachman's 1986-1987 Fleer basketball cards are business property is a contested factual question as it "almost always [is]." *Asbury*, 441 N.E.2d at 243. Accordingly, granting summary judgment on the Bachmans' claim for breach of contract is inappropriate.

## IV.  CONCLUSION

Based on the foregoing, AMCO's motion for summary judgment is DENIED.[6]

SO ORDERED.

ENTERED:  September 20, 2012

    /s/ JON E. DEGUILIO
Judge
United States District Court

---

[6] Because the Plaintiffs' Motion to Strike AMCO's expert witness Robert Connelly [DE 31] has no relation to the motion for summary judgment, the matter will be ruled on by way of separate order.